IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Michael Ellis Evans, | Case No. 6:12-cv-00035-JMC-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Officer Jeremy Jones, | |
| Defendant. | |

This matter is before the Court on cross motions for summary judgment. [Docs. 22, 31.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Defendant Officer Jeremy Jones of the Greenville County Police Department. [Doc. 1.] Defendant filed a motion for summary judgment on April 16, 2012. [Doc. 22.] By Order filed April 17, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 23.] On May 22, 2012, the Court granted Plaintiff additional time to respond to Defendant's motion for summary judgment. [Doc. 27.] Thereafter, on May 23, 2012, Plaintiff filed his motion for summary judgment, which the Court also construes as his response in opposition to Defendant's motion. [Doc. 31.] On June 11, 2012, Defendant filed a response in opposition to Plaintiff's motion. [Doc. 35.] The motions are ripe for review.

**BACKGROUND**

Plaintiff, who is incarcerated at Kirkland Correctional Institution, filed this action generally alleging Defendant used excessive force during an arrest. [Doc. 1.] Specifically, Plaintiff alleges that, while Plaintiff was in the driver's seat of a vehicle with his left hand on the steering wheel and his right hand on the ignition, Defendant opened the driver's side door and told Plaintiff and a passenger to freeze. [*Id.* at 3.] Then, before Plaintiff had a chance to surrender, Defendant shot Plaintiff in his upper torso and left elbow. [*Id.*] Plaintiff alleges he feared for his life so he started the car and put it into drive. [*Id.*] Then, Plaintiff realized he could not work the pedals; the car drifted across the street and hit a pole. [*Id.*] At that time, more police officers arrived and told Plaintiff to get out of the car and freeze. [*Id.*] Plaintiff realized he could not move his lower extremities. [*Id.*] He alleges the police officers grabbed him out of the car, throwing him to the ground, and Plaintiff then blacked out and woke up in the hospital. [*Id.* at 3–4.] Plaintiff seeks $75 million for lost wages and pain and suffering. [*Id.* at 5.]

**APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at

520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of

> constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendant argues he is entitled to summary judgment because (1) he did not use excessive force in violation of the Fourth Amendment because his actions were objectively reasonable under the circumstances [Doc. 22-1 at 3–8]; (2) he is entitled to qualified immunity because his conduct did not violate any clearly established rights of which a reasonable government official would have known [*id.* at 8–12]; and (3) he cannot be held liable for actions undertaken in his official capacity [*id.* at 12]. Defendant further argues he is immune from tort liability to the extent Plaintiff alleges any state law claims. [*Id.* at 12–14.] The Court agrees Defendant is entitled to qualified immunity.

**Qualified Immunity Standard**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

7

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

**Excessive Force Standard**

A claim that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). In applying the objective reasonableness standard, "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396–97). Further, proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," and "[t]he 'reasonableness' of a particular use

of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "[t]he Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm," *Elliott*, 99 F.3d at 641; thus, police officers do not have "to wait until a suspect shoots to confirm that a serious threat of harm exists," *id.* at 643.

In several cases, the Fourth Circuit determined an officer's use of deadly force was objectively reasonable under the circumstances, preventing a successful excessive force claim. In *Slattery v. Rizzo*, reversing the district court's denial of an officer's motion for summary judgment based on qualified immunity, the court held a reasonable officer would have probable cause to believe using deadly force was lawful where the suspect refused orders to raise his hands, appeared to have one hand around an object out of the officer's sight, and turned toward the officer with that hand hidden from view. 939 F.2d 213, 216–17 (4th Cir. 1991). In *McLenagan v. Karnes*, again reversing the district court's denial of an officer's motion for summary judgment based on qualified immunity, the Fourth Circuit held a reasonable officer, possessing the same information as the officer who used deadly force, could have believed his conduct was lawful where the suspect was running toward the officer while another officer yelled "The man has got a gun!" and the officer could not see whether the suspect had a gun in his hands. 27 F.3d 1002, 1007–08 (4th Cir. 1994). In *Elliott*, the court held the force used by the officers was objectively reasonable, where two officers together shot 22 times at an arrestee who, while sitting handcuffed in the passenger seat of a patrol car, pointed a small gun with his finger on the trigger at the officers standing outside the car. 99 F.3d at 645. Finally, in *Sigman v. Town of Chapel Hill*, the court affirmed summary judgment on the basis of qualified immunity to an officer who

fired at a suspect the officer believed was coming toward him with a knife. 161 F.3d 782, 784 (4th Cir. 1998). The court summarized,

> On the record before us, it is undisputed that, at the moment that Sigman stepped out of the house, Officer Riddle had ample knowledge of Sigman's dangerousness. Riddle knew that Sigman had a knife and was enraged inside the house, cutting himself. He knew that Sigman had been drinking and throwing things. He knew that Sigman was willing to use his knife on others because Sigman had slashed at him through the window. He knew that Sigman had made threats on his life, on his fellow officers' lives, and on Donna Solomon's life. And he knew that Sigman had not previously responded to his requests to calm down or come out of the house. Furthermore, when Sigman emerged from the house, he did not obey the officers' commands. Rather, he took a number of steps towards Officer Riddle. Riddle, and all of the officers at the scene, perceived that Sigman was holding a knife as he moved forward towards Officer Riddle, and the crowd behind Riddle was "taunting [Sigman] to continue." It is undisputed that the atmosphere was volatile and threatening. These circumstances are exactly the kind that a qualified immunity analysis requires us to consider. *See Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865; *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996) ("The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection"). Faced with this tense and dangerous situation, we conclude that Officer Riddle reasonably perceived a threat to his safety and the safety of others and that his response therefore was objectively justified and reasonable.

*Id.* at 787.

**Analysis**

Defendant contends his actions were objectively reasonable under the circumstances. [Doc. 22-1 at 11–12.] On the other hand, Plaintiff argues Defendant was not acting within the scope of his official duties by requesting backup and then not waiting for the support of his fellow officers and by not using his flashlight. [Doc. 31-1 at 4.]

Additionally, Plaintiff argues he was complying with Defendant's demands when Defendant shot him; the weapon was found on the ground of the passenger side of the vehicle, out of the reach of Plaintiff; and Defendant's intent was to track down and kill Plaintiff even though there was no deadly threat to Defendant. [*Id.*]

The following facts are undisputed, as they appear in police reports submitted by both Plaintiff and Defendant: on February 23, 2010, as Defendant passed the Citgo Corner Market on Easley Bridge Road ("Citgo"), he observed two subjects running out of the door, removing ski masks, and fleeing the scene; the Citgo had been the location of a recent armed robbery; the subjects Defendant observed fleeing the scene used the same escape route used in the previous armed robbery and were wearing identical clothing to the suspects from the first armed robbery; Defendant confirmed with a witness that the store had just been robbed; Defendant pursued the subjects on foot through a residential area where he then observed them getting into a vehicle; Defendant approached the driver's side of the vehicle with his weapon drawn and ordered the subjects to show their hands; at that time, the subject in the driver's seat[1] turned to look at Defendant, and Defendant noticed the subject's hand was in the pocket of a black hoodie that was in his lap; Defendant's training had taught him that if he cannot see a suspect's hand, he is in danger; the subject began raising his hand, which was still in the pocket; the way the subject raised his hand was the way Defendant raised his gun toward the subject; knowing the subject had just participated in a robbery and seeing how he was presenting himself toward Defendant, with his hand in the pocket of the hoodie, Defendant believed the subject had

---

[1] Plaintiff was in the driver's seat of the vehicle. [*See* Doc. 31-1 at 3.]

a gun in the pocket; therefore, Defendant discharged his weapon three times, aiming at the subject's center mass and stepping back and off line at a 45 degree angle from the car; after the third shot, the subject in the driver's seat slumped over, and the vehicle accelerated away from Defendant, crossed the street, jumped the curb, and struck a tree. [Docs. 22-2 at 3–4; 31-2; 31-3.] These undisputed facts demonstrate that, at the time Defendant fired his gun, Plaintiff was fleeing a robbery and sitting in the driver's seat of a car with at least one hand out of Defendant's view, even after Defendant ordered Plaintiff to show his hands. As the Supreme Court has stated, the standard is "reasonableness at the moment," *Graham*, 490 U.S. at 396, and applying the standard under these facts, a reasonable officer in the same circumstances—where a suspect failed to comply with an officer's directive to show his hands, had one hand hidden in a hoodie out of the officer's sight, and turned toward the officer while raising that hand in a manner similar to how someone would raise a gun—would have concluded the suspect was threatening the officer's life, justifying the use of deadly force. Plaintiff argues he was positioning himself to obey Defendant's command to show his hands [Doc. 31-1 at 2, 4] and the gun was found unloaded and on the passenger side of the vehicle, out of Plaintiff's reach [*id.* at 3, 4]. However, the Fourth Circuit precedents summarized above indicate it is objectively reasonable for an officer who believes he is threatened with deadly force to use deadly force against the threatening person, whether or not that person is actually threatening the officer with deadly force. Because Plaintiff has failed to establish a genuine issue of material fact, the Court concludes Defendant acted with objective reasonableness under the circumstances, and therefore, Defendant is entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment [Doc. 22] be GRANTED and Plaintiff's motion for summary judgment [Doc. 31] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 18, 2012
Greenville, South Carolina